IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANGEL SERRANO | : | No. 05-044-13 |
| a/k/a "King Pleasure" | : | |

## MEMORANDUM

PRATTER, J.                                                                   NOVEMBER 2, 2020

Angel Serrano a/k/a "King Pleasure" moves for a new trial under Rule 33. The Government opposes Mr. Serrano's letter motion as baseless and procedurally barred. For the reasons that follow, the Court denies the motion.

### BACKGROUND AND PROCEDURAL HISTORY

Mr. Serrano was a leader of the Latin Kings street gang. In 2006, he was convicted of one count of kidnapping in aid of racketeering in violation of 18 U.S.C.§ 1959(a)(1), for his participation in the violent kidnapping, rape, and beating of a woman, E.M. E.M. testified at trial about the injuries she sustained, including bruising on her body. She also testified that she took two photos of the bruising roughly three weeks after the incident and later provided them to the Government. During discovery, the Government notified Mr. Serrano in writing that these photographs existed and that the Government had seen them. The Government's letter disclosed a report prepared by an FBI case agent detailing that E.M. had supplied the Government with the photographs and describing what they showed. These photos were not introduced at trial because the Government admitted that they had been lost between discovery and trial. Mr. Serrano cross-examined the Government about the missing photographs and referred to them again in closing.

1

On re-direct, because Mr. Serrano brought up the photographs, a law enforcement witness testified to the subject matter of the photographs.

Mr. Serrano was sentenced to 25 years in prison, followed by five years of supervised release. Doc. No. 758. Mr. Serrano did not move for a new trial after the verdict and sentencing. Instead, he appealed to the Third Circuit Court of Appeals. The appellate court rejected Mr. Serrano's *Batson* claim and concluded that the remaining alleged error—insufficient evidence—"border[ed] on frivolity." *Batson v. Kentucky*, 476 U.S. 79 (1986). The court affirmed Mr. Serrano's conviction and sentence.

Mr. Serrano then filed a federal habeas petition *pro se* under 28 U.S.C. § 2255. The petition raised the same claims that were rejected on direct appeal. Because the § 2255 claims had already been conclusively resolved, this Court denied Mr. Serrano's § 2255 petition with prejudice in 2011. Mr. Serrano did not timely appeal the denial of his petition.

Fourteen years after he was convicted, Mr. Serrano moves for a new trial on the grounds that the Government intentionally lost the photographs, which Mr. Serrano maintains were exculpatory evidence. Mr. Serrano did not claim his due process rights under *Brady* were violated in either his direct or collateral challenges. *Brady v. Maryland*, 373 U.S. 83 (1963).

## STANDARD OF REVIEW

Under Rule 33, a court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). A court evaluating a Rule 33 motion does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Even if the Court "believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is,

that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008).

## DISCUSSION

### I. The Motion is Untimely

As a threshold matter, Mr. Serrano's Rule 33 motion is untimely. This conclusion holds regardless of whether the Court construes the motion as grounded on newly discovered evidence—which it is not—which afforded Mr. Serrano three years after the verdict to file his motion. Fed. R. Crim. P. 33(b)(1). A motion for a new trial based on newly discovered evidence for any reason other than newly discovered evidence must be filed within 14 days after the verdict. Fed. R. Crim. P. 33(b)(2). Instead, Mr. Serrano waited 14 years.

To the extent the Court construes this motion as a second or successive § 2255 petition, the Court lacks subject matter to consider it. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) permits a petitioner to file a post-trial petition challenging his federal conviction. That petition must be filed within one-year from the time the conviction is finalized. 28 U.S.C. § 2255(f)(1). Mr. Serrano challenged his conviction under § 2255 in 2011, which the Court denied. Under AEDPA, a petitioner must seek leave from the appropriate court of appeals before filing a second or successive petition. 28 U.S.C. § 2255(h). Absent authorization from the appellate court, the district court lacks subject matter jurisdiction to consider the petition. Mr. Serrano has not sought or obtained such authorization.

Mr. Serrano's motion is thus procedurally barred.

### II. Mr. Serrano's Due Process Rights Were Not Violated

Even were Mr. Serrano's motion for a new trial timely—which it is not—the motion is baseless. Mr. Serrano argues the Government violated his due process rights to receive exculpatory evidence under *Brady* by intentionally losing two photographs of Mr. Serrano's

3

kidnapping and rape victim, E.M. *Brady v. Maryland*, 373 U.S. 83 (1963). To prove a *Brady* violation, the defendant must show that: (1) the information is exculpatory; (2) the Government suppressed the information either willfully or inadvertently; and (3) the suppressed information is material. *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011). Materiality in this context means that, had the information been disclosed, the outcome of the case would have been different. *Wilson v. Beard*, 589 F.3d 651, 655 (3d Cir. 2009).

As an initial matter, *Brady* does not govern all instances where the Government has failed to disclose evidence. *Brady* and its progeny are implicated when the Government possesses exculpatory evidence but has failed to disclose it to the defendant. But, where, as here, the Government had, but no longer possesses, the evidence, the defendant must show that the Government acted in bad faith in destroying or failing to preserve the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Kennedy*, 720 F. App'x 104, 108 (3d Cir. 2017). Absent a showing of bad faith on the Government's part, failure to preserve the photographs does not constitute a denial of due process. And, accusations of intentionally losing evidence, without more, do not constitute such a showing of bad faith.

To be deprived of due process, Mr. Serrano must establish that (1) the photographs were exculpatory; (2) their exculpatory value was "apparent before [they] were destroyed"; and (3) they were effectively irreplaceable. *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). Mr. Serrano's motion fails at the threshold. The Government is required to turn over all exculpatory evidence—evidence that is *favorable* to the accused. Here, however, the Government maintains that the lost photographs were inculpatory in nature. The Court agrees.

E.M. testified at trial that the photographs showed the bruising she sustained as a result of being kidnapped and raped. The FBI's report confirmed that the photographs were of "[E.M.]'s

4

legs showing bruises from the violation. These photographs were taken in Puerto Rico approximately three weeks after she was given the violation [beating by the Latin Kings]." Testimony from Special Agent Falero at trial likewise described the extent of the bruising on E.M.'s body. Mr. Serrano does not explain how the photographs are favorable to him, given that his participation in the violent kidnapping, rape, and beating of E.M. was the basis of his conviction.[1] The Government did not gain a tactical advantage by losing photographs that were not exculpatory.

Even if the photographs were somehow exculpatory, Mr. Serrano has not established that the Government acted in bad faith. In requiring a showing of bad faith, the Supreme Court limited due process violations "to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Kennedy*, 720 F. App'x at 109 (quoting *Youngblood*, 488 U.S. at 58). This is not that case. The Government disclosed that the photographs existed during pre-trial discovery. Although they were not included among the roughly two hundred potential exhibits for use at trial, even an assumption that the Government was negligent is not a substitute for bad faith.

Nor were the two photographs irreplaceable. Although the jury did not see the photographs purportedly showing the aftermath, they did hear E.M. testify at trial to her being kidnapped, raped, and beaten. And, the jury was aware that the Government had failed to produce the photographs at trial. E.M. testified that she had taken photographs to document the extent of her injuries and Special Agent Falero was cross-examined about their whereabouts. E.M.'s testimony both on

---

[1] In his closing argument, Mr. Serrano's counsel suggested that, in the intervening three weeks, E.M. could have sustained bruising from falling off a moped instead. Mr. Serrano does not adopt that argument in his motion.

5

direct and on cross was fully submitted to the jury to credit or reject. So, at most, the photographs, would only have corroborated E.M.'s testimony. Because the photographs would have been cumulative evidence, Mr. Serrano cannot satisfy the third prong of the *Trombetta* test. *Trombetta*, 467 U.S. at 489.

Indeed, Mr. Serrano questioned the incremental value of the photographs at trial. In closing, Mr. Serrano's counsel admitted that he did not "know what pictures three weeks later are supposed to do that we haven't seen anyway." The Court agrees that the photographs would not have altered the outcome of the proceeding. Accordingly, the Court does not find that Mr. Serrano's due process rights were violated or that a miscarriage of justice occurred here. Because the Court is satisfied that the jury's verdict was consistent with the weight of the evidence, the Government's failure to produce the misplaced photographs does not to entitle Mr. Serrano to a new trial.

## CONCLUSION

For the reasons set out in this memorandum, the Court denies Mr. Serrano's motion and enters the accompanying Order.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE